UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
*Electronically Filed*

| | |
|---|---|
| MAXWELL'S PIC-PAC, INC., et al. ) | |
| ) | |
| PLAINTIFFS ) | |
| ) | |
| v.                                                        ) | CIVIL ACTION NO. 3:11-CV-18-H |
| ) | |
| TONY DEHNER, et al. ) | |
| ) | |
| DEFENDANTS ) | |

**PLAINTIFFS' RESPONSE TO**
**THE STATE'S MOTION FOR SUMMARY JUDGMENT**

The Commonwealth of Kentucky, through its representatives Tony Dehner and Danny Reed (collectively herein "the State"),[1] has moved this Court for summary judgment, asking this Court to rule that KRS 243.230(5) and 804 KAR 4:270 are constitutional as a matter of law. Noticeably absent from the State's brief, however, is any description of a rational basis, much less the required substantial and reasonable justification, for discriminating against retailers who sell staple groceries or gasoline and lubricating oil when it comes to the sale of wine and liquor.

The State spends the majority of its brief addressing Plaintiffs' due process and separation of powers arguments, arguing that the ABC Board – an *executive* agency – can immunize a statute from a "void for vagueness" challenge by passing a regulation that provides "reasonable" definitions to that statute's vague terms. The State is wrong. Kentucky's Supreme Court has emphatically declared that no matter how "reasonable" a regulatory definition may be,

---

[1] Robert Vance, Secretary of the Public Protection Cabinet, was a named Defendant in Plaintiffs' original Complaint. He was dropped as a party in Plaintiffs' Amended Complaint, leaving Messrs. Dehner and Reed as Defendants.

such action amounts to "legislating" by the executive, and therefore violates Kentucky's strong separation of powers doctrine. Accordingly, the State's motion for summary judgment should be denied, and Plaintiffs' motion for summary judgment should be granted.

### I. The State Fails to Cite Any Rational Basis, Much Less a Substantial and Reasonable Justification, Supporting the Discrimination at Issue.

In order for KRS 243.230(5) and 804 KAR 4:270 to comply with the United States Constitution there must be rational basis for the discriminatory classification embodied in those laws. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-440 (1985). And for those same laws to comply with the Kentucky Constitution there must be a "substantial and reasonable justification" for the discriminatory classification. *Elk Horn Coal Corp. v. Cheyenne Resources*, 163 S.W.3d 408, 418-419 (Ky. 2005).

The State's motion for summary judgment provides neither. In fact, the State's brief tellingly offers a grand total of **two sentences** addressing this controlling issue. In those two sentences, which are found at the top of page five of its brief, the State simply repeats the rationales that it set forth in ABC Commissioner Tony Dehner's response to Plaintiffs' Interrogatory No. 3, where Mr. Dehner identified what the State contends to be the legitimate rationales for the discrimination at issue [Dkt. 41-26 p. 3]. The State does not even attempt to support its rationales with any facts, declining to even cite to Mr. Dehner's deposition testimony or to his interrogatory answers.

Plaintiffs have squarely addressed each and every one of the State's rationales in the memorandum supporting Plaintiffs' motion for summary judgment [Dkt. 41-1 pp. 11-34]. In fact, Plaintiffs explained in great detail why none of the State's rationales justify the discrimination at issue in this case [*id.*]. Accordingly, in response to the State's equal protection

argument, Plaintiffs refer the Court to pages 11 through 34 of their summary judgment memorandum, which show why all of the State's rationales fail as a matter of law.

## II. An Executive Agency May Not Immunize a Statute From a Void For Vagueness Challenge By Defining Vague Statutory Terms.

The State spends the vast majority of its summary judgment brief trying to defeat the "void for vagueness" claim in Plaintiffs' Amended Complaint, which is based on federal and state due process and state separation of powers grounds. Specifically, the State argues that *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), governs this case, and "holds that an administrative agency's interpretation of its enabling statute is controlling so long as it reflects a 'permissible construction of the statute,' even if other permissible interpretations exist" [Dkt. 42-1 pp. 6-7]. In other words, the State argues that an *executive* agency can immunize an otherwise unconstitutionally vague Kentucky statute from a "void for vagueness" challenge by simply defining the statute's vague terms in a reasonable or "permissible" manner. The State then contends that the ABC Board defined the vague terms in KRS 243.230(5) in a "reasonable" and "permissible" manner at 804 KAR 4:270, and therefore argues that both laws are constitutional.

The State misleads. There is absolutely no Kentucky case that even remotely suggests that *Chevron*, which involved administrative construction of Federal statutes, somehow trumps Kentucky's non-delegation doctrine, which is the strongest in America. Instead, the Kentucky Supreme Court has consistently held that the Kentucky legislature may not pass a vague statute and then leave it to the executive branch to define the statute's terms. The Kentucky legislature must define a statute's terms, or at the very least provide guidelines to the executive agency charged with implementing its terms. A failure to do so renders a statute void for vagueness:

> If the legislature empowers the executive branch with authority to implement a statute without sufficient guidelines, it effectively delegates lawmaking to the

3

> executive branch. Without guidelines contained in the statute, itself, the executive branch must guess at the intent of the legislature and is thereby transformed from implementer of the law into maker of the law.

*Bd. of Trustees of the Judicial Form Retirement System v. Attorney General*, 132 S.W.3d 770, 781 (Ky. 2003). In fact, the Kentucky Supreme Court has made this pronouncement numerous times since *Chevron* was decided in 1984, **and** even cites to *Chevron* in cases where it makes this pronouncement. *Judicial Form*, 132 S.W.3d at 787. And in cases such as *Judicial Form* the Kentucky Supreme Court points out that the Kentucky Constitution requires much more clarity from Kentucky statutes than even the Federal Constitution requires from Federal statutes. Namely, the Federal Constitution requires that a Federal statute merely set forth "an intelligible principle" that the regulatory agency must follow – a "notoriously lax" standard. *Id.* at 782. Kentucky, on the other hand, "holds to a higher standard. Our predecessor court noted that Kentucky is more 'restrictive of powers granted' than the federal Constitution because the federal Constitution does not have a provision expressly forbidding the Congress to delegate its legislative powers, as do Sections 27, 28, 29, and 60 of the Kentucky Constitution. Thus, ***federal decisions do not have 'the usual pervasive force' when it comes to delegation issues. Indeed, in the area of nondelegation, Kentucky may be unsurpassed by any state in the Union.***" *Id.* (emphasis added). Therefore, *Chevron* is not the controlling authority in void for vagueness challenges to Kentucky statutes as the State suggests. Instead, cases such as *Judicial Form* and *Diemer v. Commonwealth*, 786 S.W.2d 861 (Ky. 1990), are the controlling authorities, and their disapproval of vague statutes such as KRS 243.230(5) is crystal clear.

In fact, *Diemer* provides an excellent illustration of the Kentucky Supreme Court declaring laws such as the ones currently at issue to be unconstitutional. In *Diemer* the State sought a declaratory judgment allowing it to dismantle two billboards along Interstate 65 in Bullitt County. The state alleged that the billboards violated a statute that prohibited billboards

4

from being erected "outside of an urban area and beyond six hundred and sixty (660) feet of the right-of-way which is legible and/or identifiable from the main traveled way of any interstate. . . ." *Id.* at 862-863. The legislature never defined the statutory term "urban area," so the Transportation Cabinet did so, promulgating a regulation defining the term so that it could enforce the statutory ban. *Id.* at 865. The billboard owner contended that the statute allegedly banning his billboards was void for vagueness. The State disagreed with the billboard owner, arguing – just as it does here – that the Transportation Cabinet's regulatory definition was reasonable and therefore the underlying statute should survive. The Kentucky Supreme Court disagreed with the State, holding that the regulation's reasonableness does not matter:

> The question is not whether the Secretary's designations are reasonable but whether the definition of "urban area" in KRS 177.830(10) is sufficient to withstand the charge that the statute is unconstitutionally vague and overbroad because the phrase is undefined.

*Id.* at 864.

The Supreme Court held that since the term "urban area" was not defined by the legislature, and since the statute did not provide the Transportation Cabinet with sufficient standards or guidelines for defining that term, the statute at issue was void for vagueness. The Court explained that the "legislative scheme must be essentially complete on its face, leaving to regulatory authority ***administrative rather than policy decisions***. The delegation of discretion is not unlawful only if sufficient standards controlling the exercise of that discretion are found in the act." *Id.* at 865 (emphasis added). There were no standards controlling the Transportation Cabinet's definition of "urban area," meaning the statute itself was unconstitutional. Therefore, the fact that the Transportation Cabinet may have ultimately provided a "reasonable" definition to the term "urban area" did not cure the constitutional defect:

> [S]uch defect has not been constitutionally relieved by transferring to the Secretary of Transportation power to cure the defect by executive order because

this becomes a constitutionally impermissible delegation of the legislative function.

*Id.* at 866.

Similarly, in this case, the "reasonableness" of the definitions adopted by the ABC Board in 804 KAR 4:270 do not matter. While the State contends that "it is difficult to imagine a better definition of staple groceries" than the one set forth in the regulation, the definition's purported greatness has no bearing on its constitutionality.[2] What matters is whether the legislature provided any guidelines or standards controlling the ABC Board's definition of "substantial part of the commercial transaction" and "staple groceries," and it did not. In fact, the preamble to 804 KAR 4:270 confirms that it was the ABC Board's confusion, and not statutory guidelines or standards, that prompted the Board to adopt a regulation defining the key terms of KRS 243.230(5).[3]

Accordingly, the State's suggestion that KRS 243.230(5) is not void for vagueness so long as the regulatory definitions in 804 KAR 4:270 are "reasonable" should be rejected. Even if the ABC Board's definitions of "substantial part of the commercial transaction" and "staple

---

[2] Plaintiffs strongly disagree that the ABC Board's definition of "staple groceries" is clear and worthy of praise. Instead, it is arguably as vague as the term "staple groceries" itself, as the definition excludes "food products prepared for immediate consumption." Does that mean that bread, pasteurized milk, diced carrots, orange juice, peanut butter, saltine crackers, and cereal – all of which are "prepared for immediate consumption" – are not "staple groceries?" Tellingly, ABC Commissioner Tony Dehner, who is in charge of administering 804 KAR 4:270, admitted in his deposition that he has no idea what the phrase "food products prepared for immediate consumption" means [Dkt. 41-46 pp. 115-116].

[3] KRS 243.230(5) also runs afoul of the due process guarantees provided by the United States Constitution and Kentucky Constitution. *See Connolly v. General Const. Co.*, 269 U.S. 385 (1925)("a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as its meaning and differ as to its application violates the first essential of due process of law"). Plaintiffs discuss this in detail in the brief supporting their motion for summary judgment and will not belabor it here [Dkt. 42-1 pp. 37 *et seq.*].

groceries" are reasonable, it does not change the fact that (1) those terms, in and of themselves, are vague and can be defined in numerous reasonable ways, and (2) the legislature provided no standards or guidelines for determining which of the wide range of "reasonable" definitions to use. While the ABC Board suggests that 10% of monthly sales is a "reasonable" definition of "substantial part of the commercial transaction," it provides no legislative basis for using the 10% number. The Board could have just as easily defined "substantial part" as 50% of monthly sales, or 75% of monthly sales, and such a definition would be just as reasonable as (if not more reasonable than) 10%. That definition makes a *huge* difference to retailers, because if "substantial part" were defined as 75% of monthly sales, many (if not all) of the Coalition members would qualify to apply for a wine and liquor license. And a convenience store's sales of "staple groceries" might well amount to over 10% on a monthly basis, but not 25% or 35%. By choosing *any* percentage – whether 10% or 90% – the ABC Board made an arbitrary, yet very important, *policy* decision without any legislative guidance. This policy decision amounts to legislating by the executive and is a violation of separation of powers and due process. It should now be overturned.

## CONCLUSION

The State fails to provide any legitimate justification for discriminating against grocery stores and convenience stores when it comes to the sale of wine and liquor. Accordingly, KRS 243.230(5) and 804 KAR 4:270 fail under both the Federal and the Kentucky equal protection standards. Moreover, KRS 243.230(5) is void for vagueness, and the fact that the ABC Board defined the statute's vague terms in the absence of legislative guidance does not save the statute. Accordingly, the State's motion for summary judgment should be denied. And as previously requested by Plaintiffs, KRS 243.230(5) and 804 KAR 4:270 should be declared unconstitutional

and void as a matter of law, and Plaintiffs' simultaneously filed motion for summary judgment should be granted.

Respectfully submitted,

s/ Christopher W. Brooker
M. Stephen Pitt
Christopher W. Brooker
WYATT, TARRANT & COMBS, LLP
500 W. Jefferson Street, Suite 2800
Louisville, Kentucky 40202
502.589.5235
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

It is hereby certified that on this 30th day of January, 2012, a copy of the foregoing was served electronically via the CM/ECF filing system upon the following:

| | |
|---|---|
| Peter F. Ervin, Esq. | Kenneth S. Handmaker, Esq. |
| General Counsel | Kevin L. Chlarson, Esq. |
| Public Protection Cabinet | Loren Prizant, Esq. |
| Capital Plaza Tower | Middleton Reutlinger |
| 500 Mero Street | 2500 Brown & Williamson Tower |
| 5th Floor | Louisville, Kentucky 40202 |
| Frankfort, Kentucky 40601 | |

s/ Christopher W. Brooker
One of Counsel for Plaintiffs

60119787.1