UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**MAXWELL'S PIC-PAC, INC.**                                        **PLAINTIFFS**
**FOOD WITH WINE COALITION, INC.**

**v.**                                             **CIVIL ACTION NO. 3:11CV-18-H**

**ROBERT VANCE,** *et al.*                                           **DEFENDANTS**

**LIQUOR OUTLET, LLC**                                  **INTERVENING DEFENDANT**

\*   \*   \*   \*   \*   \*   \*

<u>INTERVENING DEFENDANT'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Intervening Defendant Liquor Outlet, LLC, d/b/a The Party Source ("Intervening Defendant" or "Party Source"), by counsel, respectfully submits this Reply Brief supporting its Motion for Summary Judgment.

**I.      INTRODUCTION**

> The court, therefore, is led to the ineluctable conclusion that this statute [KRS 243.230] is a police matter that implicates the Commonwealth's "core area" powers to regulate intoxicating beverages, guaranteed and reserved to it by the Twenty-First Amendment . . . there exists a rational basis for the statute [KRS 243.230], namely, the need to regulate establishments serving alcoholic beverages. Therefore, plaintiffs' substantive due process and equal protection attacks fail.

*Simms v. Farris*, 657 F. Supp. 119, 124 (E.D. Ky. 1987).  This quote from the *Simms* court shows the fatal flaw in Plaintiffs' entire case.  There is a rational basis for KRS 243.230 under the Commonwealth's Twenty-first Amendment powers; the federal courts have already determined that to be the case.  This insurmountable hurdle is why Plaintiffs spend less than a page of their forty (40) page Memorandum supporting their summary judgment motion ("Plaintiffs' Memorandum") discussing the application of the Twenty-first Amendment to this case.  It is also why Plaintiffs only spend a page in their twenty-nine (29) page Response to Party

Source's summary judgment motion discussing application of the Twenty-first Amendment to this case. Sixty-nine (69) pages of briefing, two (2) pages on the Twenty-first Amendment, <u>and no discussion of or reference to *Simms*</u>. Plaintiffs also completely ignore the relevant Kentucky cases analyzing the Commonwealth's Twenty-first Amendment powers. *See, e.g.*, Party Source's Memorandum in Support of its Motion for Summary Judgment ("Party Source's Memorandum"), pp. 18-22, 24-25; Party Source's Response Brief opposing Plaintiffs' Motion for Summary Judgment ("Party Source's Response"), pp. 17-20.[1]

Instead of concentrating their Response on the law and issues, Plaintiffs rely on a three prong "strategy" of accusation, puffery, and spin by: (1) repeatedly analogizing themselves to victims of race discrimination (Plaintiffs' Response, pp. 2, 8-9, 11, 18); (2) inventing a new analogy comparing themselves to persons subject to "earring discrimination" (Plaintiffs' Response, pp. 3, 8, 14); and (3) accusing Party Source of "dishonesty" at every turn. Opposing summary judgment requires the submission of proof and arguments of law, not inappropriate analogies and baseless accusations. Plaintiffs only present the latter, thus failing the nonmovant's burden under FRCP 56. As a result, this Court should grant Party Source's Motion and dismiss Plaintiffs' case.

## II.  LAW & ARGUMENT

### A.  The Plaintiffs' Claims Are Procedurally Defective – They Are Barred By The Applicable Statutes Of Limitation And Plaintiffs Have No Standing.

Party Source has already discussed why FWWC's claims are barred by the applicable statutes of limitation and why Plaintiffs have no standing. Party Source's Memorandum, pp. 7-12. Regarding the statutes of limitation, Plaintiffs argue that the one year statute of limitations

---

[1]  In addition to the cases cited in those sections of Party Source's briefs, also see *City of Bowling Green v. Gasoline Marketers, Inc.*, 539 S.W.2d 281 (Ky. 1976). The court recognized the General Assembly's power to leave the sale of malt beverages out of KRS 243.230(5) as a subject for city ordinances. *Id.* at 284.

2

for § 1983 actions (***Collard v. Ky. Bd. of Nursing***, 896 F.2d 179, 182 (6th Cir. 1990)) should not apply because FWWC is seeking vindication of rights, not a damages remedy.[2] The ***Collard*** court rejected such an artificial distinction:

> If the Supreme Court had not decided *Wilson* and *Owens*, plaintiff's argument as a matter of pure logic might carry the day since plaintiff's claim here certainly partakes of "an injury to the rights of the plaintiff." However, in the interest of simplicity and uniformity, the Supreme Court has designated "personal injury" statutes rather than "personal rights" statutes as the benchmark. Accordingly, we conclude that section 1983 actions in Kentucky are limited by the one-year statute of limitations found in section 413.140(1)(a).

***Collard***, 896 F.2d at 182; *see also*, ***Bonner v. Perry***, 564 F.3d 424, 430-431 (6th Cir. 2009) (following ***Collard*** in dismissing case involving "civil rights violations" as barred by one year statute of limitation).[3] Moreover, Plaintiffs begrudgingly admit that if a statute of limitation applies in this case (it does), it bars FWWC's claims.

Without belaboring why Plaintiffs do not have standing, several rebuttal points are appropriate:

i   "Each [member of the Coalition] is engaged in the grocery store business." Exhibit 8, FWWC's answer to Interrogatory No. 2.[4] This was FWWC's sworn statement when it identified its members' primary businesses. FWWC's answer was not "engaged in the grocery store and gasoline and lubricating oil business," or "engaged in the gas station business." Certain FWWC members may sell gasoline and/or lubricating oil, but those are simply ancillary products to their chosen grocery business. That is because FWWC's members are not gas stations or convenience stores. Selling some gasoline (there is no record proof indicating

---

[2]   Plaintiffs quote ***Kuhnle Bros., Inc. v. County of Geauga***, 103 F.3d 516, 522 (6th Cir. 1997), to argue that a statute of limitations cannot defeat FWWC's claims. Plaintiffs present the ***Kuhnle*** court's ruling as to a due process claim for the deprivation of a liberty interest (right to travel). Plaintiffs did not present the ***Kuhnle*** court's ruling that a due process violation for a deprivation of a property interest can be time barred by a statute of limitation, even when challenging the constitutionality of a statute. ***Id.*** at 521. Because a liquor license is not a "liberty" interest (it is not a property interest either), ***Kuhnle*** does not save FWWC's claims.

[3]   Plaintiffs' argument that this case is a declaratory judgment action does not help them. "A request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred. 'Because a declaratory judgment action is a procedural device used to vindicate substantive rights, it is time-barred only if relief on a direct claim would also be barred.' A contrary rule would allow a plaintiff to "mak[e] a mockery of the statute of limitations by the simple expedient of creative labeling.'" ***Int'l Ass'n of Machinists and Aerospace Workers v. Tenn. Valley Auth.***, 108 F.3d 658, 668 (6th Cir. 1997) (internal citations omitted).

[4]   Exhibits 1-22 were submitted with Party Source's Memorandum.

3

- how much gasoline any member of FWWC sells) does not give Plaintiffs standing to represent gas stations or convenience stores in this case.

- Plaintiffs cannot dispute that a grocery store can sell wine and distilled spirits in separate premises (Kroger and Trader Joe's) and they have submitted no proof of the alleged "tremendous capital cost" to do so. Furthermore, there is no record proof supporting their "shoppers avoid two transactions" theory of injury. Summary judgment is not a time for unsupported hypotheticals of shoppers' buying habits.

- Plaintiffs misunderstand the germane purpose requirement. FWWC's founding purpose was to have grocery stores sell <u>wine</u>. <u>Exhibits 2, 5-7</u>. FWWC lobbied the General Assembly, for a "wine license" exception to KRS 243.230(5). FWWC has never publicly advocated selling distilled spirits until this suit.

- Maxwell's still has submitted no proof of standing – no proof of injury because it cannot sell wine or distilled spirits, and no proof it represents the interests of gasoline stations or convenience stores. Comparing Maxwell's to the ***Brown v. Board of Education*** plaintiffs is hyperbole, not summary judgment proof.

For the procedural reasons discussed above and in Party Source's Memorandum, the Court should grant Party Source's Motion and dismiss Plaintiffs' claims.

**B.     Plaintiffs' Claims Are Substantively Defective.**

1. <u>Plaintiffs Either Misunderstand Or Intentionally Mischaracterize Party Source's Separation Of Powers Argument</u>.

At no point in its Memorandum did Party Source argue that this Court has no judicial review power or that any law passed by the General Assembly is constitutional *per se*. Plaintiffs' Response, pp. 10-12. Rather, Party Source presented the following: (1) authority establishing the importance of the separation of powers doctrine in U.S. and Kentucky governance and jurisprudence; (2) authority establishing that courts begin their review of a statute with its constitutionality presumed; (3) legislative history that is the basis for Kentucky's alcohol regulations, including KRS 243.230(5); and (4) failed efforts by the Plaintiffs to lobby for an exception to KRS 243.230(5). Party Source's Memorandum, pp. 12-18. Plaintiffs want the Court to start its review with a presumption that KRS 243.230(5) is unconstitutional,

4

providing no authority for such a new standard of review. Plaintiffs ask this Court to forget that the Twenty-first Amendment is the foundation for the General Assembly (and every other state legislature) to regulate alcohol. Kentucky's alcohol regulation scheme was not enacted in a constitutional vacuum as Plaintiffs want this Court to believe.[5]

### 2. Plaintiffs Cannot Escape From The Twenty-first Amendment.

Plaintiffs deliberately mischaracterize Party Source's application of the Twenty-first Amendment to this case. Party Source has not argued that the Twenty-first Amendment trumps other constitutional amendments. Party Source has argued that the Twenty-first Amendment must be considered with any equal protection and due process considerations. Party Source's Memorandum, pp. 18-22; Party Source's Response, pp. 17-20. When doing so and given the circumstances of this case, the Twenty-first Amendment wins out, as it has done in other cases where courts balanced equal protection, due process, and Twenty-first Amendment concerns. *See, e.g.*, *Simms*, 657 F. Supp. at 123-124; *Temperance League of Ky. v. Perry*, 74 S.W.3d 730, 733 (Ky. 2002); *Beacon Liquors v. Martin*, 279 Ky. 468, 131 S.W.2d 446, 449 (Ky. 1939). Plaintiffs discuss none of these cases. While Plaintiffs avoid the Twenty-first Amendment at all costs, it is part of the same Constitution as the Equal Protection and Due Process Clauses and cannot be ignored.

### 3. The Record Presents In Detail The Rational Basis For KRS 243.230(5) And KAR 804 4:270.

The *Simms* quote that opened this Reply explaining the rational basis for KRS 243.230 is

---

[5] Plaintiffs take Party Source to task for presenting information "argued" by FWWC to the legislature – that Kentucky should allow grocery stores to sell wine since 34 other states do, including 6 of 7 border states. Plaintiffs' Response, p. 12, fn. 7. That argument was already of record in this case. Exhibit 23, Mason Deposition, 94:5-96:4 and its Exhibit 9, January 11, 2011 Press Release; Exhibit 12. The Shelby Report (Exhibit 12) and the January 2011 Press Release contain public statements by Ted Mason, FWWC's Executive Director and lobbyist, AFTER the filing of the lawsuit. The comments were not limited to the "legislative arena." Plaintiffs may now recognize that the comments do not help their case, but Mr. Mason certainly believed they helped the cause when they were made.

just as applicable to this case. ***Simms***, ***Beacon Liquors***, and ***Temperance League*** have already addressed equal protection and rational basis considerations when classifying which retailers can sell certain alcoholic beverages and which cannot. Such classifications have been upheld. The Court also has before it the 1933 Liquor Control Committee detailing the rational basis for all of Kentucky alcohol regulations.

Party Source's "business of choice" point is that under KRS 243.230(5) grocery stores and package liquor stores cannot expand into each other's businesses without implications for wine and distilled spirits sales. For example, a package liquor store cannot get a package liquor license and then turn itself into a grocery store or gas station selling wine and distilled spirits. The "choice" argument also recognizes that any business must adhere to the regulations that apply to its chosen industry, whether it is a grocery store, liquor store, a barber shop, a restaurant, or any other business. Finally, the "choice" argument also relates to the fact that any grocery store can obtain a package liquor license under Kentucky law by having a separate premises. Kroger and Trader Joe's have incorporated this option into their business models in Kentucky.

In short, there is more than enough record evidence establishing a rational basis for KRS 243.230(5) and 804 KAR 4:270 as part of Kentucky's regulation of establishments selling wine and distilled spirits. ***Simms***, 657 F.Supp. at 124.[6]

    4.    <u>Plaintiffs Do Not Have Valid Due Process Claims</u>.

Party Source has already explained why Plaintiffs have no factual or legal basis for their due process claims. Party Source's Memorandum, pp. 26-28; Party Source's Response, pp. 28-31. Plaintiffs ignore that the basis of any due process claim has to be a property right. ***Warren v. City of Athens, Ohio***, 411 F.3d 697, 708 (6th 2005) ("Only after a plaintiff has met the burden

---

[6] Plaintiffs present two cases from Nebraska that purportedly invalidated similar laws. Plaintiffs' Response, p. 15, fn 8. The Twenty-first Amendment allows each state to decide how to regulate alcohol within its own borders. What Nebraska does has no bearing on Kentucky or any other state's alcohol regulatory system.

of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process."); ***Thomas v. Cohen***, 304 F.3d 563, 576 (6th Cir. 2002) ("the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process."). Here, there is no right to a package liquor license under federal or state law. U.S. CONST. amend XXI; *see also*, ***Lexington Retail Beverage Dealers Ass'n v. Dept. of Alcoholic Beverage Control Bd.***, 303 S.W.2d 268, 270 (Ky. 1957) (holders of liquor license have no property right in the license).

The basis of a vagueness claim has to be that a definition cannot be understood. But if Plaintiffs or any other grocery store (or gas station or convenience store) were truly confused as to the prohibition under KRS 243.230(5) because of the "vague" definitions, there would be record evidence of some grocery store applying for a package license for its grocery store premises under the confused notion that it would be eligible for the license.[7] There is no such record evidence.

Plaintiffs are not confused as to the terms "substantial part of the commercial transaction" and "staple groceries." That is why Kroger and Trader Joe's have separate premises to sell wine and distilled spirits – they obviously understand the KRS 243.230(5) prohibition. Plaintiffs just do not want the statute (or 804 KAR 4:270) applying to them anymore.

Finally, the ABC Board's authority under KRS 241.060 to administer and enforce Kentucky's alcohol regulation laws is not in question: "the Legislature has exercised its

---

[7] After all, there is nothing in the ABC license application indicating grocery stores cannot apply for a package license. Exhibit 24.

7

discretion as to what the [Kentucky Alcoholic Beverage Control Act] shall be, and has delegated to the Alcoholic Beverage Control Board the administration and enforcement of the law." ***Ky. Alcoholic Beverage Control Bd. v. Klein***, 301 Ky. 757, 762, 192 S.W.2d 735, 738 (Ky. 1946). This includes the power to set the standards of what constitutes "substantial part of the commercial transaction" and "staple groceries." ***Id.*** at 737-738 (the ABC Board is given wide discretion to regulate alcohol). The Plaintiffs entirely ignore this authority.

> 5. <u>Presenting Information As To The Effects Of Striking Down KRS 243.230(5) And 804 KAR 4:270 Is Consistent With Party Source's Permitted Intervention In This Case</u>.

Plaintiffs end their Response with a lengthy section criticizing Party Source's presentation of the practical effects of eliminating KRS 243.230(5) and 804 KAR 4:270. Presenting such information is why Party Source was permitted to intervene:

> While The Party Source may not be able to intervene of right, it certainly has claims or defenses that share common questions of law or fact. Fed. R. Civ. P. 24(b)(1)(B). The Court can see no reason that the original parties will be unfairly prejudiced in any way by intervention. **The Party Source's views could add a dimension to the argument that is missing from the Commonwealth's narrow constitutional focus. When considering a challenge with such broad ramifications, the Court will benefit from the additional advice**.

Docket No. 17, Memorandum and Order, pp. 2-3 (emphasis added).

Unlike Plaintiffs, Party Source did not present mere rhetoric to this Court to support its presentation concerning the effects of alcohol deregulation. Party Source supported its presentation with affidavit testimony from persons knowledgeable of the alcohol industry and the societal problems associated with alcohol, the expert report of Pam Erickson,[8] and other supportive documents and information. Party Source's Memorandum, pp. 28-37. While Party Source's presentation speaks for itself, some response must be made to correct the more

---

[8] Interestingly, Plaintiffs' Response does not cite once to the expert report they submitted in this case to rebut any of the information from Ms. Erickson's Report and Supplemental Report.

egregiously inaccurate statements made by Plaintiffs:

- Plaintiffs downplay the fact that eliminating KRS 243.230(5) will presumably lead to a large increase in the number of retailers selling wine and distilled spirits, increasing access to all forms of alcohol. Plaintiffs presumably anticipate many of FWWC's members' stores will apply for package liquor licenses if this suit succeeds. That is the whole point of this lawsuit. While the quota system may not allow every Kentucky grocery store (or gas station or convenience store) to obtain a license, it takes no logical leap to assume that they will certainly fill up a large number of the remaining quota slots, if not all of them.

- Plaintiffs have no response to the valid lessons taught by alcohol deregulation in the UK that are discussed by Ms. Erickson in her Report. One cannot ignore those lessons when eliminating alcohol regulations to liberalize alcohol access.

- Party Source is not "back dooring" Dr. Bartley's study of the economic impact of FWWC's proposed legislation to be an expert report. Party Source is well aware of the rules of expert disclosure and nowhere has it represented that it is presenting the Bartley study as an "expert report." But it is certainly relevant information to consider in rebuttal to FWWC's grossly overstated benefits of allowing wine to be sold in grocery stores that it presented (and continues to present on its web site) to the public, Kentucky small wineries, and the General Assembly.[9] Plaintiffs attempt to twist the Bartley study to their advantage by claiming it shows there will "not be a significant increase in alcohol consumption." The Bartley study is limited to rebutting FWWC's propaganda campaign of allowing wine to be sold in grocery stores. It is not an alcohol consumption study.

- Plaintiffs either intentionally ignore the circumstances surrounding *Liquor Outlet, LLC v. Alcohol Beverage Control Bd.*, 141 S.W.3d 378 (Ky. App. 2004), or they did not read the case in its entirety.[10] Plaintiffs take multiple pot shots at Party Source for bringing that lawsuit, which concerned Sunday alcohol sales in Bellevue, Kentucky, then arguing against increased alcohol access/sales in this case. For example, Plaintiffs state that Party Source "succeeded in forcing Sunday sales of wine and liquor." Plaintiffs' Response, p. 20. At the time that case was brought a local ordinance in Bellevue already allowed Sunday sales. *Id.* at 380. The controversy was whether the City's ordinance violated KRS 244.290 and was, therefore, void. *Id.* at 381. While the 1992 ordinance at issue was found to violate the version of KRS 244.290 in effect at the time the ordinance was promulgated, the Court held that the 1998 version of KRS 244.290 allowed cities to permit Sunday sales. *Id.* at 385-386. At no time was Party Source seeking to strike down a statute or eliminate a law to weaken Kentucky's alcohol regulation

---

[9] Interestingly, despite this lawsuit, FWWC's promotional materials and public statements either completely ignore or downplay the fact that this lawsuit seeks the sale of wine AND distilled spirits in grocery stores AND gas stations AND convenience stores. Exhibits 5-7, 12, 23.

[10] Party Source submits the *Liquor Outlet* case for the Court's convenience as Exhibit 25.

9

system.

- Party Source did not state or argue that wine and distilled spirit sales in Kentucky are limited to "package liquor stores." Such sales are limited to those holding a "retail package license." KRS 243.030; KRS 243.240. A holder of such a license is commonly referred to as a "package store." As for the "package liquor store concept," the term is used to distinguish a state's alcohol regulatory system based on licensing retailers to sell alcohol as opposed to the state owning liquor stores. <u>Exhibit 16</u>, p. 5. Party Source has already dealt with Plaintiffs' attack on this system when they claim that any retailer can obtain a package liquor license in Kentucky other than grocery stores, gas stations, and convenience stores. Party Source's Response, pp. 8-9.

- Plaintiffs continue to use drug stores as the straw man for their argument that other Kentucky retailers unfairly sell wine and distilled spirits. Party Source has already responded to this red herring argument in its Response by discussing how drug stores have always been involved in the retail sale of alcohol. Party Source's Response, pp. 9-10. Plaintiffs also argue that they should not be treated differently from drug stores since minors are already allowed in drug stores where they can roam the shelves for wine and distilled spirits. KRS 244.085(7) provides an exception for minors to be on the premises of an establishment that sells alcohol by the package (including beer) where the "usual or customary business" is a convenience store, grocery store, or drugstore. This is why minors can be in a grocery store that sells beer. Finally, Plaintiffs complain that drug stores are treated the same as package liquor stores for purposes of selling wine and distilled spirits. Under KRS 243.240, there is no other comparable license and the statute treats all holders of package licenses the same.

- Party Source stands by its discussion of the increased training that package liquor store employees go through as compared to grocery store employees. The Plaintiffs feign offense by any suggestion that grocery store employees are not trained as well or as much as package store employees. The basic point that Plaintiffs miss is that all package liquor store employees go through alcohol training. There is no evidence of record that all grocery store employees go through comparable training, and there is no reason to think that they do. Are Plaintiffs representing that their 16-17 year old employees, who cannot stock or sell alcohol under KRS 244.087, have gone through similar levels of alcohol training? Are Plaintiffs representing that their employees in the bakery, deli, and meat departments, who do not sell alcohol, have gone through similar levels of alcohol training? Plaintiffs' suggestion that all grocery store employees are trained in alcohol sales and laws just like all package store employees is unbelievable on its face.

- Plaintiffs attempt to argue that there is an ordinance in Lexington requiring mandatory server training in "licensed retail establishments" where alcohol is "sold or served," and because grocery stores sell beer, they must train their employees regarding sales of all types of alcohol. Plaintiffs' Response, pp. 24-25.

10

Plaintiffs miss a number of points. First, the Lexington ordinance by its terms applies to retail establishments that *sell and serve* alcohol, i.e sell and serve by the drink. No grocery store (or drug store or liquor store) can sell or serve alcohol by the drink in Kentucky under a package license or malt beverage license. Plaintiffs' attempt to apply the Ordinance's training requirements to grocery stores is gross misunderstanding of the Ordinance. Second, the fact that Kroger stores have malt beverage licenses in Lexington has nothing to with and is not evidence of "training" employees to sell and serve alcoholic beverages. Third, as Plaintiffs have done throughout summary judgment briefing, their arguments about how much training grocery stores provide their employees are not supported by any affidavits or record evidence. Plaintiffs simply make blanket, unsupported assertions.

### III. CONCLUSION

Plaintiffs have not let the facts or law get in their way of arguing their claims. What does get in their way are the procedural and substantive defects in their case. This includes the inescapable conclusion that there is a rational basis for KRS 243.230(5) and 804 KAR 4:270 being a part of Kentucky's alcohol regulatory scheme.

For all of the reasons described in detail throughout this Reply and Party Source's Memorandum, Plaintiffs have no valid claims. Accordingly, this Court should grant Party Source's Motion for Summary Judgment and dismiss all of Plaintiffs' claims.

Respectfully Submitted,

*/s/ Kenneth S. Handmaker*
Kenneth S. Handmaker
Kevin L. Chlarson
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, Kentucky 40202
(502) 584-1135
(502) 561-0442 (fax)
khandmaker@middreut.com
kchlarson@middreut.com
*Counsel for Intervening Defendant*

**CERTIFICATE OF SERVICE**

It is hereby certified that on this 16th day of February, 2012, Intervening Defendant's Response Brief In Opposition to Plaintiffs' Motion for Summary Judgment was electronically filed with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

M. Stephen Pitt, Esq.
Merrill S. Schell, Esq.
Christopher W. Brooker, Esq.
Wyatt, Tarrant & Combs
500 West Jefferson Street, Suite 2800
Louisville, Kentucky 40202
Counsel for Plaintiffs


Peter F. Ervin, Esq.
General Counsel, Public Protection Cabinet
Capital Plaza Tower
500 Metro Street, Fifth Floor
Frankfort, Kentucky 40601
Counsel for Defendants

*/s/ Kenneth S. Handmaker*
Counsel for Intervening Defendant