UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-18-H

MAXWELL'S PIC-PAC, INC., et. al.
                                                                    PLAINTIFFS

v.

TONY DEHNER, et. al.                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 1988(b), Plaintiffs have moved for attorney's fees in the amount of $334,081.25, plus expenses in the amount of $11,706.94, in connection with their meritorious constitutional claim against Defendants. At this point, Plaintiffs seek fees from the Commonwealth of Kentucky, which defended the statute at issue in this litigation.[1]

I.

Under 42 U.S.C. § 1988, "In any action or proceeding to enforce [section 1983 of this title], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." To recover attorney's fees under § 1988, one must be a "prevailing party," that is one must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)(quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). No one disputes Plaintiffs' status as a prevailing party. Plaintiffs brought suit alleging that KRS § 243.230(5) violated the Equal Protection Clause of the United States Constitution, and this Court held that the

---

[1] Plaintiff also sought to obtain attorney's fees from Party Source, an intervenor in this action. The Court previously ruled that Party Source is not responsible for Plaintiffs' attorney's fees.

statute was unconstitutional in its application to these Plaintiffs.

The standard is that this Court should award attorney's fees unless "special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429; *see Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001)("[I]n the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff."). A non-prevailing party bears the burden of making "a strong showing that 'special circumstances warrant a denial of fees.'" *Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 422 (6th Cir. 2005).

Defendants argue that the Court should exercise its discretion in these circumstances and deny the application for fees. They make a number of facially reasonable arguments in support of this position. First, they say that Congress designed § 1988 to benefit those whose economic status hinders their access to the courts. Here, Plaintiffs had plenty of resources to avail themselves of such access. Moreover, Plaintiffs will benefit economically if this Court's decision is affirmed on appeal, and therefore, there is no need to further award them with attorney's fees. However, as far as the Court can tell, the economic status or benefit of the prevailing party is irrelevant to the question of whether attorney's fees should be awarded. Section 1988(b) authorizes the recovery of attorney's fees to a "prevailing party," and does not mention any consideration of the Plaintiffs' financial condition. Nor can the Court find any cases which suggest Plaintiffs' financial condition should be a consideration.[2]

---

[2] The Sixth Circuit has affirmatively established that in a § 1988 case, "a nonprevailing plaintiff's ability to pay may be used as a factor to determine the size of the award, but not whether an award is appropriate in the first place." *Wolfe v. Perry*, 412 F.3d 707, 724 (6th Cir. 2005). However, the Court has not found any Sixth Circuit cases stating that a court can take into account a prevailing plaintiff's financial conditions as a factor in whether to award fees or how to adjust those fees.

Next, Defendants argue that the constitutional violation in question did not arise from any overt or bad faith action on the part of the Commonwealth of Kentucky. The state merely enforced a decades old statute. However, even though the state Defendants may have acted in complete good faith, the Court cannot find any support for the proposition that the Defendants' good faith supports the denial of fees. *Morscott, Inc. v. City of Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991)("However, good faith is not a 'special circumstance' which justifies the denial of attorney's fees under section 1988."). Similarly, the Supreme Court has said that awarding fees under § 1988 is not dependent on a finding of bad faith. *Hutto v. Finney*, 437 U.S. 678, 693 (1978). It is quite often true that states violate the Constitution without any purpose or intent to do so. However, § 1988 is not meant to be punitive in nature, but rather to reimburse the obvious costs of attorneys for those who successfully challenge an unconstitutional statute.

Finally, Plaintiffs remind the Court that the taxpayers are responsible for paying the attorney's fees if they are awarded to Plaintiffs here. Yet the case law in this area is full of examples in which the taxpayers bear the burden of attorney's fees under § 1988. *See, e.g.*, *Morscott, Inc.*, 936 F.2d at 273. The Court cannot find any cases which suggest that a "special circumstance" exists when taxpayers are the ultimate source of payment for attorney's fees.

Although Defendants' contentions may well be true, the Court does not believe that any of them justify denying attorney's fees in these circumstances. Because the Defendants have failed in this regard, the Court finds that Plaintiffs are entitled to attorney's fees under § 1988.

II.

The primary concern now turns to the reasonableness of the amount of attorney's fees that the Court should award in these circumstances. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

3

Ultimately, "[a] reasonable fee is 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Hadix*, 65 F.3d at 535(quoting *Blum*, 465 U.S. at 897). Although many factors may affect this Court's calculation of the attorney's fees, the Court must "provide a clear and concise explanation of its reasons for the fee award." *Id.* at 535.

Plaintiffs request attorney's fees in the amount of $334,081.25 based upon approximately 910 hours of work at hourly rates ranging between $475 for partners to $160 for paralegals. District courts have a considerable amount of discretion in this area, because of the "district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.* at 469 n.2. The Sixth Circuit has determined "that a fee calculated in terms of hours of service provided is the fairest and most manageable approach," which is known as the lodestar method. *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 636 (6th Cir. 1979)(abrogated by Sixth Circuit on other grounds).

A.

According to the lodestar method, the Court must first determine the reasonable number of hours spent by the attorneys and their staff on the lawsuit. "Hours may be cut for duplication, padding or frivolous claims. In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services." *Id.* at 636-37. Plaintiffs present evidence that eight attorneys, four paralegals, and one legal librarian expended 910 hours of work on this case. The Court will reduce the number of hours according to Sixth Circuit case law principles for the following reasons.

This Court does not doubt that Plaintiffs indeed performed 910 hours of work on this case as a result of the admittedly complex issues involved. In the midst of trying to win a case, it is

difficult to know which part of the effort is most critical. Some work proves less critical or unnecessary. The Court must make its judgments in retrospect, which is necessary to reach a reasonable assessment. Consequently, the Court finds that 910 hours is more than necessary to adequately research these issues. For one, the case lasted only seventeen months. The parties engaged in little discovery and produced a relatively small evidentiary record, including only three depositions, one expert report, and a few affidavits. Moreover, the issues in this case were principally limited to legal issues.[3]

While the Court will not question the propriety of utilizing eight different attorneys and four different paralegals on a case such as this, after a careful review of the invoices itemizing the amount of hours certain lawyers devoted to specific tasks, it is apparent that considerable overlap was inevitable. "Plaintiffs are not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job." *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004)(upholding the lower court's 10% reduction in hours based in part on the duplication of legal services rendered). While duplication may be unavoidable, it is not always compensable.

Considering all of the above, the Court will reduce the number of hours expended on this case to account for the duplication of services inherently involved in a case such as this, where thirteen people engaged in work on a limited number of overlapping issues over a relatively short period of time. *See Sigley v. Kuhn*, 205 F.3d 1341, at *8 (6th Cir. 2000)(quoting *Northcross*, 611 F.2d 624, 636-37 (6th Cir. 1979)). As stated above, the Sixth Circuit has affirmatively approved

---

[3] The Court also notes that a considerable number of the hours for which Plaintiffs seek compensation pertained to defending their case against Party Source. This Court has already determined that Party Source is not responsible to pay any portion of the attorney's fees, and to charge these fees against another party seems inequitable.

5

this "arbitrary but essentially fair approach". *Northcross*, 611 F.2d at 636-37. Further, the Sixth Circuit has determined that a 10% reduction is a modest amount. *Ky. Rest. Concepts Inc.*, 117 F. App'x at 419. Given the short time frame of this case, the limited discovery, and the number of attorneys, the Court concludes that a 15% reduction is appropriate.[4]

B.

Continuing with the lodestar method, the Court must multiply the reasonable number of hours by reasonable hourly rates of the participating lawyers and staff. "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). This "community market principle" allows the Court to consider the requesting attorney's well-defined billing rates within a broader community-wide market to determine the reasonableness of the fees. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007).

The Sixth Circuit commented that in § 1988, Congress' "use [of] the words 'reasonable' fees, not 'liberal' fees" meant that the fees authorized under the statute "are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in the region." *Coulter v. State of Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986).[5] In *Coulter,* the Sixth Circuit illustrated that

---

[4] The Court will reduce each participating attorney or staff member's number of hours worked by 15%, rounding up or down to the nearest whole hour.

[5] This notion comports with other courts' decisions on the matter. For example, the Fourth Circuit determined that it would be impermissible for a district court to be influenced by the fact that attorneys were "partners in a leading local firm" who "customarily billed at the high end of private market rates," because such a consideration controverts "the Supreme Court's direction in *Blum v. Stevenson*, that private firms and nonprofit legal service organizations should be

where a renowned lawyer customarily received $250 per hour in a field where a competent lawyer in the region normally received $85 per hour, the attorneys "should be compensated at the lower rate." *Id.* The Sixth Circuit upheld District Judge L. Clure Morton's reduction of attorney's fee rates based on his finding that a lower rate reflected prevailing market rates for lawyers in that area, which he supported with reasonable fee rates he had previously determined in another similar action. 805 F.2d at 149. The Court may "also rely upon its own familiarity with the rates charged by attorneys in the community in order to determine whether a fee request is reasonable." *Am. Civil Liberties Union of Ky., Inc. v. Grayson Cnty., Ky.*, 2008 WL 5101672, at *5 (W.D. Ky. Nov. 26, 2008).

Plaintiffs present the 2011 and 2012 hourly rates for the eight attorneys, four paralegals, and one legal librarian, which range from $475 to $180 for attorneys and $200 to $150 for paralegals. Plaintiffs contend that these are the market rates for attorneys, paralegals, and librarians in this community. Plaintiffs bear the burden of justifying their requested hourly rates. *Blum*, 465 U.S. at 895 n.11.

Plaintiffs claim that their success in this case, the difficulty of the issues involved including a rigorous Equal Protection Clause standard to surmount, and the level of legal skill and experience Plaintiffs' attorneys, paralegals, and librarian brought to this case, cumulatively justify this award. In support of their rates, Plaintiffs further argue that these that they have charged their client for their services. Plaintiffs support their rates with affidavits from two of the most prominent attorneys in this area, both of whom claim that Plaintiffs' rates are reasonable.

As explained above, district courts are not required to adopt the attorney's fee rates charged

---

treated equally in setting hourly rates under § 1988." *Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 129 (4th Cir. 1990).

by the highest paid attorneys in town to their most lucrative clients. While the rates charged to their clients do reflect what these attorneys can charge, the rates requested in this case operate simply as a starting point from which the Court will determine the appropriate market rate for attorneys with sufficient competence and experience to pursue this lawsuit, in accordance with Sixth Circuit precedent. *See Gonter*, 510 F.3d at 618; *Geier,* 372 F.3d at 791.

To this end, the Court has reviewed attorney's fee decisions in this Court over the past several years. In a case involving the constitutional rights of a teacher, who school officials prohibited from attending certain Louisville Area Chemistry Alliance meetings as a result of his interactions with another teacher, this Court reduced Plaintiffs' attorney's fees from the $250 rate requested to $200, recognizing that while this case involved civil rights issues, the case was not terribly complex. *Barr v. Jefferson Cnty. Bd. of Educ.*, No. 3:06-CV-75-H (W.D. Ky. filed May 13, 2010). In another case involving the constitutionality of a plaintiff's advertisements in a public right-of-way, the Court accepted plaintiffs' purported rates, which included only two attorneys who billed at rates over $200. *Bench Billboard Co., Inc. v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:05-CV-172-H (W.D. Ky. filed Sept. 25, 2007). In that case, the Court accepted rates of $305 and $275 for two attorneys with thirty-six and twenty-seven years' experience, respectively. *Id.* This Court also ruled that Kentucky Racing Commission regulations that prohibited jockeys from wearing certain promotional emblems or advertising on their racing attire were unconstitutional, and awarded attorney's fees rates of $250 and $150, reduced from the requested $300 per hour, because the experience of counsel did not support a higher rate. *Albarado v. Ky. Racing Comm'n*, No. 3:04-CV-231-H (W.D. Ky. filed Feb. 7, 2005).

Finally, in *Meredith v. Jefferson Cnty. Bd. of Educ.*, this Court awarded attorney's fees at a

rate of $225 per hour, reduced from the requested $400 rate, because Plaintiff failed to present an argument as to why a higher rate was justified. 2007 WL 3342282, at *2-3 (W.D. Ky. Nov. 9, 2007). In the underlying case, the Supreme Court determined that Defendant's student assignment plan violated the Equal Protection Clause, a decision with a more comparable level of publicity and impact to the present case. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007).

Plaintiffs' counsel are among the best in this region. They handled this case with commendable skill, and the legal issues involved were indeed difficult. They brought significant experience and ability to bear on the case, justifying the award of attorneys' fees at the higher end of this range. As shown above, this Court has previously awarded rates between $200 and $305 for attorney's fees under § 1988. For attorneys with a higher level of skill and experience, the rate was at the higher end of this range. There is no evidence that these attorneys forewent other opportunities to handle this dispute. Nevertheless, the time spent and the results obtained are significant enough to justify an extension beyond the higher end of that range.[6]

Accordingly, the Court will reduce each attorney's rate by 25%, using the attorney's 2011 rate as the basis for the reduction and rounding *up* to the nearest dollar figure. Thus making the highest rate $342 per hour. The Court finds these rates aligned with the value of the quality of work and the complexity of the case, and are therefore reasonable.

## C.

After calculating the lodestar fee, the Court may adjust that amount upward or downward based on the twelve-factor *Johnson* test, which the Supreme Court found "useful" in *Blanchard v.*

---

[6] Moreover, the decisions cited reflect attorney's fees from some number of years ago, and inflation accounts for an upward adjustment of that range.

9

*Bergeron*, 489 U.S. 87, 93 (1989). *Reed*, 179 F.3d at 472; *see also Bell v. Prefix, Inc.*, 2013 WL 323005, at *2 (6th Cir. Jan. 29, 2013).[7] The Sixth Circuit has intimated that adjustments should be made only in "rare" and "extraordinary" circumstances, because many of these *Johnson* factors are subsumed within the lodestar calculation. *Geier*, 372 F.3d at 792. Plaintiffs, however, do not request an enhanced fee.

Using the method described, the Court calculates the attorney's fees to be $208,990. The Court finds these hours, rates, and total attorney's fee assessment reasonable.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiffs are awarded attorney's fees in the amount of $208,990 and costs in the amount of $11,706.94.

cc:   Counsel of Record

---

[7] These twelve factors, are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 435(quoting *Blanchard*, 489 U.S. at 91).